**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **JOANNA J. MOORE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL NO. 08CV066** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Joanna J. Moore, by counsel, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability Insurance Benefits ("DIB"). The Commissioner's final decision is based on a finding by the Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (docket no. 12) be DENIED; that Defendant's Motion for Summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

Judgment (docket no. 14) be GRANTED; and that the final decision of the Commissioner be AFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff initially filed for DIB on August 30, 2005, alleging disability beginning June 18, 2005. (R. at 22.) The claim was denied initially and upon reconsideration. (R. at 22.) Plaintiff filed a request for hearing on May 15, 2006, and a hearing was held before the ALJ on December 20, 2006. (R. at 22.) On January 24, 2007, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (R. at 19-29.) Specifically, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 24-29.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v.

Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the evaluation is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity"

("SGA").[2] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R. § 404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve (12) months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[3] based on an assessment of the claimant's residual functional capacity ("RFC")[4] and the "physical and mental demands of work [the claimant] has

---

[2] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[3] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[4] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and

done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

**IV. ANALYSIS**

---

continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in SGA at any time relevant to the decision. (R. at 24.) At steps two and three, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, irritable bowel syndrome, and anxiety disorder, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 32.) In so finding, the ALJ determined that Plaintiff had the RFC "to occasionally lift ten pounds, walk and stand four to six hours and sit for six hours in an eight-hour day." (R. at 24.) The ALJ further opined that Plaintiff was able "to maintain regular workplace attendance and complete a normal workday." (R. at 25.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work. (R. at 28.) Finally, at step five, the ALJ inquired of the VE whether there were jobs existing in significant numbers in the national economy that a hypothetical individual of Plaintiff's age, education, work experience, and RFC could perform. (R. at 28-29.) The VE identified the jobs of library assistant, file clerk, and receptionist. (R. at 29.) Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act at any time from June 18, 2005 through the date of the decision, January 24, 2007. (R. at 29.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law. (Pl.'s Mot. for Summ. J. at 1.) In support of her argument, Plaintiff contends that the ALJ erred by: (1) posing a hypothetical to the VE unsupported by the record; (2) affording her treating physician's opinion improper weight; (3) failing to consider the combined effect of Plaintiff's impairments; and (4) improperly making a credibility determination. (Pl.'s Br. in Support of Mot. for Summ. J. ("Pl.'s Br.") at 8-9.)

**1.      The ALJ Posed a Hypothetical Supported by the Evidence of Record**

Plaintiff argues that the ALJ erred in step five of the sequential evaluation by posing hypotheticals to the VE that were unsupported by the record. (Pl.'s Br. at 8.) During step five, the Commissioner must show that the plaintiff can do other work, given his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Frequently, a VE is called to testify to the work a plaintiff can perform, as well as to whether such work is available in the economy. The ALJ's function is to pose hypothetical questions to the VE that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments. Walker, 889 F.2d at 50. Accordingly, the ALJ's hypothetical will be valid if the limitations included are supported by substantial evidence in the record.

In the case before this Court, the record indicates that the hypothetical questions the ALJ posed to the VE were supported by the evidence of record. The ALJ did not ask the VE to assume anything not supported by the record, and in fact posed to the VE a lengthy hypothetical which included Plaintiff's limitations resulting from her multiple impairments. (R. at 382-83.) The ALJ posed the following hypothetical to the VE:

> It is presumed she is limited as indicated by the consultancy examiner, Dr. Hundley who examined her, and she cited that she had findings that were consistent with fibromyalgia syndrome, which impose some limitations. Her ability to stand and walk is moderately impaired four to six hours. Here ability to sit is mildly impaired six hours. Her ability to bend, stoop, and climb is moderately impaired four hours a day. So that is on an occasional basis. Fine motor activities are unimpaired eight hours a day. So that is frequent. Reaching is mildly impaired due to fibromyalgia six hours a day. So that would be frequent too. And she can carry 10 pounds occasionally moderately severe. And there are some restrictions that she would need readily accessible toilet facilities for flare-ups of her irritable bowel syndrome. And also in addition to that, we have some mental impairments that cause some limitations due to a generalized anxiety disorder. She could do simple and repetitive task but would have some mild difficulty with detailed or complex tasks, and she might need additional supervision for those types of activities. There is no problem

> with her accepting supervision or instructions. She can relate adequately to co-workers and the public. She could maintain regular attendance, workplace attendance, and complete a normal work day but her ability to work consistently over time might be mildly impaired because of her anxiety. And she would have a moderate difficult time dealing with the usual stressors in competitive work places. (R. at 382-83.)

The ALJ continued by posing an additional hypothetical to the VE, with the following limitations:

> the same limitations mentally but the restrictions are a person could only lift 10 pounds both occasionally and frequently. Could stand and walk at least two hours in an eight hour day. Can sit about six hours in an eight hour day. Should never climb ladders, ropes, or scaffolds, and only occasionally climb stairs. Could frequently use ramps, and only occasionally crawl, crouch, kneel, and stoop, and the same mental restrictions. (R. at 384-85.)

In examining the record, it is clear the ALJ's hypothetical questions were based on evidence from examinations of the Plaintiff conducted by multiple physicians, as the ALJ derived the above limitations from consultive examinations by Drs. Hundley and Blackmer. (R. at 26, 283-84.) Accordingly, the hypothetical questions posed by the ALJ accurately represent the claimant's RFC, and are supported by substantial evidence on the record.

### 2. The ALJ Gave Proper Weight to the Treating Physician's Medical Opinions

Plaintiff also contends that the ALJ did not assign the proper amount of weight to the opinions of her treating physician, Dr. Harrell. (Pl.'s Br. at 8.) During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the

-8-

plaintiff's treating physicians, consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); see 20 C.F.R. § 404.1527(d)(3)-(4), (e).

The ALJ recognized that the opinions of Dr. Harrell were not in conflict with those of the consultive examining physicians. Both Drs. Harrell and Hundley recognized that the Plaintiff's symptoms were consistent with a diagnosis of fibromyalgia. (R. at 25-26.) In respect to Plaintiff's impairments of irritable bowel syndrome and anxiety disorder, there were no medical opinions to take into consideration. While Plaintiff claimed she suffered from irritable bowel syndrome, she only mentioned it once to the consulting physician. (R. at 27.) She never sought treatment for irritable bowel syndrome from Dr. Harrell, her treating physician. (R. at 27.) Similarly, she never sought treatment from a mental health professional for her anxiety

disorder. (R. at 27.) Therefore, in respect to these conditions, there were no opinions of her treating physicians to take into account. Accordingly, it was not necessary for the ALJ to assign respective weight to the different medical opinions, because the medical and supplemental evidence was consistent as to Plaintiff's current condition of fibromyalgia, and the evidence was silent on Plaintiff's complaints of anxiety disorder and irritable bowel syndrome.

### 3. The ALJ Considered the Combined Effect of Plaintiff's Impairments

Plaintiff argues that the ALJ failed to consider the impact of Plaintiff's multiple impairments upon her ability to perform gainful activity. (Pl.'s Br. at 9.) The Fourth Circuit has held that the combined effect of a claimant's impairments must be considered when determining a claimant's ability to work. Walker, 889 F.2d at 49-50. Further, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985)).

Although Plaintiff alleged that she suffered from irritable bowel syndrome and anxiety, the ALJ recognized that the independent medical record did not support these allegations. (R. at 27.) Plaintiff never sought treatment for either complaint, and only mentioned the irritable bowel syndrome to the consulting physician. (R. at 27.) Giving some credence to Plaintiff's subjective complaints, the ALJ nevertheless discussed these impairments, and considered them in determining that Plaintiff was employable. (R. at 27.) Because Plaintiff did not seek treatment for her irritable bowel syndrome and anxiety disorder, the ALJ found her claim that the alleged disorders left her unable to work not credible. (R. at 27.)

Most notably, the ALJ recognized the one impairment Plaintiff actively sought medical attention for was insufficient to show that Plaintiff was unable to work. (R. at 27.) Although Plaintiff suffered from fibromyalgia, there was no indication that Plaintiff told her treating physician the impairment was affecting her ability to work. (R. at 27.) Furthermore, her treating physician did not rule out Plaintiff performing any work activities due to her fibromyalgia. (R. at 27.)

The ALJ specifically noted that he "reviewed the records" and "no acceptable medical source designated by the Commissioner . . . indicated that the claimant's impairments considered singly or in combination, equal the severity of a listed impairment." (R. at 24.) The ALJ thoroughly discussed Plaintiff's multiple impairments, and why the impairments were insufficient to show that Plaintiff was unable to work. The ALJ's analysis satisfies the requirements of Walker and Reichenbach, as he properly considered the combined effects of Plaintiff's impairments.

   **4.  The ALJ Properly Made an Adverse Credibility Determination**

Plaintiff contends that the ALJ improperly made an adverse credibility determination. (Pl.'s Br. at 9.) Plaintiff claims that the ALJ failed to make the proper determination "by (1) not specifying which allegations of pain and/or other symptoms he found not credible; (2) not discussing the consideration or application of the factors mandated by SSR 96-7p; and (3) not stating clear and convincing reasons for rejecting claimant's testimony." (Pl.'s Br. at 9.)

In evaluating a claimant's subjective symptoms based on pain, an ALJ must follow a two-step analysis. Craig, 76 F.3d at 594; see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable

physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Id. at 595-96; SSR 96-7p, at 5-6, 11.

The ALJ determined that the Plaintiff's allegations were not consistent with the medical record. (R. at 27.) The ALJ specifically discussed Plaintiff's claim of irritable bowel syndrome, and then compared the complaint to the medical record, which was devoid of any such treatment. (R. at 27.) The ALJ even stated, "[i]t is difficult to accept her allegations regarding the severity of her irritable bowel impairment when she has not actively sought medical attention for this condition during the past 18 months." (R. at 27.) Similarly, the ALJ determined that Plaintiff had not sought any medical treatment for her anxiety, thus indicating "that the current medications prescribed by her rheumatologist appear to be addressing her anxiety symptoms." (R. at 27.)

In regards to Plaintiff's fibromyalgia, the ALJ examined her treatment regimen. (R. at 27.) Although the ALJ recognized that Plaintiff had been treated for fibromyalgia, the ALJ

-12-

doubted her credibility regarding the severity of her symptoms. (R. at 27.) In fact, the medical record demonstrates that Plaintiff has improved since the start of her treatment, and symptoms were only "mild." (R. at 325.) Moreover, Plaintiff also reported improvement in her symptoms. (R. at 325.) The ALJ noted that Plaintiff never told her treating physician that her fibromyalgia symptoms limited her walking or standing during the day, and in fact, her treating physician prescribed an exercise routine, thus showing that her treating physician did not see her fibromyalgia to be disabling as Plaintiff claimed. (R. at 27, 327.)

Accordingly, this Court finds that the ALJ properly made and discussed his adverse credibility determination.

## V. CONCLUSION

Based on the foregoing analysis, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (docket no. 12) be DENIED; that Defendant's Motion for Summary Judgment (docket no. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any**

**right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Date:  September 30, 2008
Richmond, Virginia